UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THERESA MARIE
CHAPPELL,

                Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

Case No. 2:18-cv-11400
District Judge Sean F. Cox
Magistrate Judge Anthony P. Patti

_____/

**REPORT AND RECOMMENDATION TO DEEM WITHDRAWN
PLAINTIFF'S INITIAL MOTION FOR SUMMARY JUDGMENT (DE 11),
GRANT PLAINTIFF'S SUBSEQUENT MOTION FOR SUMMARY
JUDGMENT (DE 15), DENY DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT (DE 18), and REMAND THIS MATTER TO THE
COMMISSIONER FOR FURTHER ACTION**

I.    **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary

judgment (DE 15), **DENY** Defendant's motion for summary judgment (DE 18),

and **REMAND** this matter to the Commissioner for further action.[1]

_____

[1] In addition, the Court should deem withdrawn Plaintiff's previously filed motion
for summary judgment (DE 11).

## II. REPORT

Plaintiff, Theresa Marie Chappell, brings this action under 42 U.S.C. §§ 405(g), 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income (SSI) benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (DE 15), the Commissioner's cross-motion for summary judgment (DE 18), Plaintiff's reply (DE 19), and the administrative record (DE 7).

### A. Background and Administrative History

Plaintiff applied for SSI on June 20, 2014. (R. at 349-354.) Plaintiff alleges her disability began on February 10, 2014, at the age of 48, at which point the Social Security Administration (SSA) considers her a "[y]ounger person." 20 C.F.R. §§ 404.1563(c), 416.963(c). (R. at 349.) In her disability report, she lists several conditions (anxiety, high blood pressure, post-traumatic stress disorder (PTSD), and back injury due to an accident at work) as limiting her ability to work. (R. at 395.) Her application was denied on September 24, 2014. (R. at 186-202, 240-243.)

### 1. Initial hearing and decision

In October 2014, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). (R. at 246-248.) Plaintiff turned 50 years old on December 8,

2015, at which point the Social Security Administration considers her a "[p]erson closely approaching advanced age."  20 C.F.R. §§ 404.1563(d), 416.963(d).  (R. at 349, DE 15 at 31.)

On January 22, 2016, ALJ Andrew G. Sloss held a hearing, at which Plaintiff and a vocational expert (VE), Michelle Robb, testified.  (R. at 155-185.) On the same date, Plaintiff amended her alleged onset date (AOD) to June 19, 2014, which happens to be the same day as a neurology progress note by neurologist Mouaz Sbei, M.D.  (R. at 368, 1519-1656.)  On February 2, 2016, ALJ Sloss issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 203-224.)

Plaintiff submitted a request for review of the hearing decision/order.  (R. at 294-296.)  On February 6, 2017, the Appeals Council remanded the case to the ALJ for resolution of issues concerning:  **(a)** "decisional language explaining which findings from the prior decision remain binding and which do not[;]" **(b)** further consideration of Plaintiff's migraines at Step 2 of the sequential evaluation; **(c)** further assessment of the opinion evidence (because the state agency's physical RFC assessment was performed by a single-decision maker (SDM)); and, **(d)** further specification of which of Dr. Kaul's limitations are included in Plaintiff's RFC, given that the ALJ accorded "partial weight" to Dr. Kaul's opinions.  (R. at 225-230.)

### 2.   Subsequent hearing and decision

On July 13, 2017, ALJ Sloss held a hearing, at which Plaintiff and a vocational expert (VE), Judith Findora, testified.  (R. at 137-154.)  On August 1, 2017, ALJ Sloss issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 11-34.)

Plaintiff submitted a request for review of the hearing decision/order.  (R. at 346-348.)  However, on April 25, 2018, the Appeals Council denied Plaintiff's request for review.  (R. at 1-6.)  Thus, ALJ Sloss's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on May 3, 2018.

### B.   Plaintiff's Medical History

The administrative record contains approximately 1,614 pages of medical records, which were available to the ALJ at the time of his August 1, 2017 decision.  (R. at 32-34, 473-2,086 [Exhibits 1F-31F].)  These materials will be discussed in detail, as necessary, below.

### C.   The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 19, 2014, which he described as "the application date" but which is more accurately the amended AOD.  (R. at 16, 368.)

At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: osteoarthritis, degenerative disc disease (DDD), and migraine headaches.  (*Id*. at 16-18.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id*. at 18-19.)  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[2] and determined that Plaintiff had the RFC:

> . . . to perform light work [*i.e., exertional limitations*]. . . except that
> the claimant can occasionally climb ramps or stairs and can frequently
> balance [*i.e.*, *postural limitations*].  The claimant must also avoid even
> moderate exposure to hazards [*i.e.*, *environmental limitations*].

(*Id*. at 19-26.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work.  (*Id*. at 26.)  At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as cleaner, cashier, and packer.  (*Id*. at 27.)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since June 19, 2014.  (*Id*. at 27-28.)

---

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case

under the Social Security Act, the Court "must affirm the Commissioner's decision

if it 'is supported by substantial evidence and was made pursuant to proper legal

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see*

*also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under

this standard, "substantial evidence is defined as 'more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the

court does "not try the case *de novo*, resolve conflicts in evidence or decide

questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court,

to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial.

The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

Plaintiff contends that the ALJ erred in failing to give significant weight to the opinions of four treating medical providers.  Plaintiff also contends that the ALJ erred by failing to accurately characterize her limitations related to:  **(a)** standing, walking, lifting, and carrying (*i.e., exertional limitations*); **(b)** impaired speech; **(c)** need to nap; and, **(d)** inability to sustain and complete a normal workday and workweek without excessive interruption.  (DE 15 at 3, 6, 22.)  The Commissioner contends that substantial evidence supports the RFC finding.  (DE 18 at 6-23.)

### 1. Back pain, lumbar radiculopathy, and opinion evidence on the exertional limitations of light work

### a. Physical health opinion evidence

Plaintiff claims to have "back pain and lumbar radiculopathy not corrected by a surgical fusion[.]" (DE 15 at 22.) The ALJ's decision contains an extensive review of the treatment records. (R. at 21-24.) Then, the ALJ discussed multiple pieces of opinion evidence, including the following regarding Plaintiff's physical health:

- The September 22, 2014 report of consultative examiner (CE) Asit K. Ray, M.D., who had impressions of lower back pain, DDD, history of PTSD, and history of mini-stroke (R. at 611) and opined that Plaintiff "would be able to perform her usual and customary activities including her occupational duties without any restrictions[,]" (R. at 612)

- The June 29, 2015 letter from Michael Giacalone, M.D. (Hamilton Community Health Network), which notes that Plaintiff was seen on June 3, 2014 and should be limited to "no lifting greater than 5 lbs, limited standing, sitting and stooping." (R. at 1810)

- The July 1, 2015 disability certificate signed by Salah Eldohiri, M.D. (Insight Institute of Neurosurgery & Neuroscience), who opined that Plaintiff was "restricted from lifting more than 5 lbs[.]" (R. at 1796)

- The January 19, 2016 medical source statement (MSS) of Topaz Holloway, DNP, AGPCNP-C (Hamilton Community Health Network), who opined that Plaintiff could occasionally lift or carry up to 5 pounds, sit a total of 2 hours, stand a total of 1 hour and walk a total of 1 hour (in an 8-hour workday), and needed to sit or stand at her discretion. (R. at 1918-1919)

- The January 2016 MSS of neurologist Mouaz Sbei, M.D., who listed Plaintiff's headaches among the diagnostic support and who opined that Plaintiff could sit for 4 hours, stand for 1 hour and walk for 30 minutes (total in an 8-hour workday), needed to sit or stand at her discretion, and could not occasionally lift or carry.  (R. at 2019-2020)

- The January 2016 MSS of Dr. Eldohiri, who opined that Plaintiff could sit for 30 minutes, stand for 30 minutes and walk for 0-30 minutes (total in an 8-hour workday), needed to sit or stand at her discretion, and could occasionally and frequently lift or carry up to 5 pounds.  (R. at 2021-2022)

- The March 4, 2016 statement of Jawad Shah, M.D. (Insight Institute of Neurosurgery & Neuroscience), who stated:  "I support this patient's claim for disability.  She currently has low back pain and lumbar radiculopathy.  She cannot work due to these diagnosis."  (R. at 2023)

The ALJ accorded "great weight" to Dr. Ray's findings and "little weight" to the remainder of these opinions, with the exception of Dr. Eldohiri's disability certificate, as to which the ALJ did not make a specific assignment of weight.  (R. at 22-26.)[3]

### b.    The ALJ assigned "little weight" to  four treating source opinions, each of which would bar work at the light exertional level.

Exertional limitations include "sitting, standing, walking, lifting, carrying, pushing, and pulling[.]"  20 C.F.R. §§ 404.1569a(b), 416.969a(b).  According to Plaintiff, substantial evidence of his capability to perform "any of the defining

---

[3] There is also the September 24, 2014 physical RFC assessment by Sarah Johnson, SDM.  (R. at 194-196.)

characteristics of light work" is lacking.  (DE 15 at 23.)  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. §§ 404.1567(b), 416.967(b) (emphases added).

The four treating medical providers to whom Plaintiff refers are:  (1) primary care provider Ms. Holloway; (2) neurologist Dr. Sbei; and, (3) pain management specialist Dr. Eldohiri (each of whom filled out the same MSS form); as well as, (4) neurosurgeon Dr. Shah (whose letter provides 3 substantive sentences).  (DE 15 at 3, 6, 22.)  The parties agree that Holloway, Sbei, and Eldohiri opined that Plaintiff had standing, walking, and lifting limitations that would have prevented her from performing a full range of light work.  (DE 15 at 23-24, DE 18 at 17.)  Dr. Shah's opinion letter provides the ultimate limitation of "cannot work."  (R. at 2023.)  Plaintiff contends that "other evidence in the record supports these limitations."  (DE 15 at 24-26.)  Yet, as described below, the ALJ:

- after outlining Dr. Eldohiri's MSS's non-exertional limitations, the ALJ accorded little weight to Dr. Eldohiri's assessments, "as the opinion is not consistent with the record as a whole.  Dr. Eldohiri also does not give an explanation for his restrictions. The undersigned notes that Dr. Eldohiri last evaluated the claimant more than a year before . . . he provided his opinion. The claimant's own testimony is also in excess of the limitations stated by Dr. Eldohiri."

- accorded little weight to Dr. Sbei's MSS, "because it is inconsistent with the evidence of record including normal diagnostic testing." Moreover, the ALJ observed that "[t]he limitations cited by Dr. Sbei would require the claimant to use a feeding tube since she could not even lift a fork."

- accorded little weight to Dr. Shah's March 4, 2016 statement, "because it is conclusory and inconsistent with the evidence of record including normal diagnostic testing."

- recognized that Ms. Holloway was not an "acceptable medical source," but still found Holloway's assessment "relevant as to the determination of the claimant's level of functioning." Noting that the medical evidence of record (MER) revealed only "mild degenerative changes with regard to the claimant's [DDD] and improvement with treatment[,]" and further noting that the "medical evidence is also consistent with a finding of light work[,]" the ALJ gave little weight to Holloway's assessment "to the extent it is consistent with the established [RFC]." (R. at 25-26.)

(R. at 24-26 (emphases added).) Thus, the ALJ discounted Dr. Eldohiri's MSS, Dr. Sbei's MSS, and Dr. Shah's statements based on the supportability and/or consistency factors. 20 C.F.R. §§ 404.1527(c)(3),(4), 416.927(c)(3),(4). Additionally, the ALJ considered Ms. Holloway's MSS as an opinion from a medical source who is not an acceptable medical source. 20 C.F.R. §§ 404.1527(f), 416.927(f).

          **c.**    **The ALJ assigned "great weight" to Dr. Ray's physical CE report, but the ALJ's substantial evidence for light work is unclear.**

In assigning "great weight" to Dr. Ray's findings, the ALJ explains that they are "consistent with the medical evidence of record[,]" and that "[t]he overall record is consistent with restricted light work."  (R. at 24.)  Later, when considering Ms. Holloway's opinion, the ALJ notes:  "the medical evidence of record reveals only mild degenerative changes with regard to the claimant's [DDD] and improvement with treatment.  The medical evidence is also consistent with a finding of light work."  (R. at 26.)

Still, it is not clear that the subsequent decision's light work limitation is supported by substantial evidence.  By way of background, in his prior opinion, the ALJ accorded "great weight" to the state agency's physical RFC assessment, which was consistent with light work.  (R. at 216, 194-196.)  However, it was authored by an SDM.  As the Appeals Council acknowledged on February 6, 2017, "[s]ingle decision-maker findings do not constitute opinion evidence and must not be considered or evaluated in determining the claimant's disability . . . ."  (R. at 228.)

More concerning, although the ALJ's prior and subsequent opinions provided similar summaries of Dr. Ray's report (*compare* R. at 213, *with* R. at 22-23), the ALJ previously assigned Dr. Ray's report "little weight," dispelling his opinion of "no work restrictions" by claiming the overall record was "consistent with restricted light work."  (R. at 216.)  Now, in the subsequent decision, without

12

an assignment of "great weight" to the SDM's physical RFC assessment, the ALJ this time assigns Dr. Ray's report "great weight," still because "[t]he overall record is consistent with restricted light work."  (R. at 24).

The Commissioner is correct that the ALJ referred to "extensive evidence" when reviewing the treatment records.  (R. at 21-24, DE 18 at 7-8, 20.) Nonetheless, the Undersigned does not see an "accurate and logical bridge" between the evidence and the ALJ's determination that Plaintiff is capable of the lifting, carrying, standing, walking, sitting, pushing and pulling limitations of light work.  *See Gross v. Comm'r of Soc. Sec.*, 247 F.Supp.3d 824, 829 (E. D Mich. 2017) (the Court "may not uphold an ALJ's decision, even if there is enough evidence in the record to support it, if the decision fails to provide an accurate and logical bridge between the evidence and the result.") (citation omitted); *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (requiring an appellate record that would "permit meaningful review" of the ALJ's application of the rules).

## 2. Migraines, headaches, and the absence of related limitation in the RFC

Plaintiff also claims to have "facial droop, weakness, hemiplegia, dizziness and confusion and impaired speech . . . secondary to complicated migraines[.]" (DE 15 at 22.)  By way of background, in his initial decision, ALJ Sloss listed only osteoarthritis and DDD as Plaintiff's Step 2 severe impairments.  (R. at 208-209.)

However, as noted above, the Appeals Council's order remanding the case included instructions that "[f]urther consideration is needed of the claimant's migraines at step two of the sequential evaluation . . . ."  (R. at 227.)

### a. The subsequent decision's discussion of migraines and headaches

On August 1, 2017, ALJ Sloss determined that Plaintiff's severe impairments included osteoarthritis, DDD and migraine headaches.  (R. at 16-18.) Within the Step 2 discussion, the ALJ stated that Plaintiff's "symptoms have been attributed to migraine headaches[,]" for which he cited six exhibits.  (R. at 17.)  In addition, the ALJ accorded "little weight to [consultative examiner] Dr. Dickson's findings with regard to the claimant's speech[.]"  (*Id*., R. at 605-607.)  The ALJ also reviewed state agency consultant Dr. Kaul's conclusions as to the broad functional areas, including that Plaintiff had moderate difficulties in maintaining concentration, persistence and pace (CPP), assigned Dr. Kaul's opinion "little weight," and concluded that Plaintiff was, *inter alia*, mildly limited in CPP.  (R. at 18, 192.)[4]

---

[4] Dr. Kaul also performed a mental RFC assessment, which revealed that Plaintiff was "moderately limited" in her abilities to "understand and remember detailed instructions," "carry out detailed instructions," "maintain attention and concentration for extended periods," and "respond appropriately to changes in the work setting."  (R. at 196-198).

At Step 3, the ALJ concluded that Plaintiff's experience of migraine headaches "fails to meet the requirements of any relevant listing under 11.00 Neurological." (R. at 19.)  Then, within the RFC discussion, the ALJ mentioned several records related to headaches, migraines and neurological examinations:

- Dr. Sbei's February 6, 2014 records, which note, "[s]he has a <u>normal neurological examination</u> and her headache is much better." (R. at 680 (emphasis added))

- June 2014 discharge diagnoses included "Right sided weakness and numbness likely origin is Complicated Migraine . . . " (R. at 1532; *see also* R. at 1522)

- July 2, 2014 records from Hurley Medical Center, which reflect that, "[o]n evaluation[,] she had an <u>intact neurological examination</u> with the exception that she has an abnormal speech pattern with missed pronunciation of words that seems somewhat volitional and not specifically suggestive of dysarthria or aphasia." (R. at 844 (emphasis added))

- Ms. Holloway's records from an October 6, 2014 visit, which note "normal attention span and concentration." (R. at 695)

- Dr. Sbei's October 13, 2014 note that Plaintiff's "headaches are much better though she still complains of occasional migraines once every 10 days or so . . ." (R. at 668.)

- Puneet Gupta, M.D.'s November 3, 2014 notes that Plaintiff "was currently <u>neurologically intact</u> on my examination . . . ." (R. at 941 (emphasis added))

- Dr. Sbei's February 2015 note that Plaintiff "started back with some headaches recently." (R. at 1804)

- Dr. Sbei's March 2015 note that Plaintiff is "pretty much headache free . . . ." (R. at 1805)

- Patrick J. Hawley, M.D.'s April 17, 2015 notes, which reflect a chief complaint of "left sided weakness . . . and a headache[,]" with "left sided facial droop and slurred speech," (R. at 1675, 1678), and an assessment of "[m]igraine, unspecified migraine type[,]" (R. at 1677, 1681).  (*See also* R. at 1684)

- An April 18, 2015 consultation with Mohammad Sabbagh, M.D., who noted that Plaintiff had "transient numbness in the left side of the body followed by severe headache, I think most compatible with migraine associated phenomenon."  (R. at 1742)

- Ms. Holloway's May 2015 notes, which reflect that Plaintiff reported feeling better but had had "a severe headache, changes in vision and numbness in her right side . . . [,]" which is "why she went to ER . . . ."  R. at 684.)

- July 2015 records from Hurley Medical Center, which reflect that Plaintiff's "[n]eurological exam was completely normal . . . ."  (R. at 1945 (emphasis added))

(R. at 21-24.)

In addition to the ALJ's acknowledgement of the aforementioned headache and migraine treatment records, the Court notes that, in January 2016, Ms. Holloway, Dr. Sbei and Dr. Eldohiri each opined that Plaintiff's pain, fatigue and other symptoms caused marked and/or substantial interference with Plaintiff's abilities to "understand, remember and/or carry out instructions or procedures[,]" and "maintain attention, concentration, persistence and pace[,]" and further opined that Plaintiff would be "off task or away from a work station . . . more than two 15 minute breaks and a 30 minute lunch[,]" and would "miss[] three or more days

from work in a typical month." (R. at 1919, 2020, 2022.) The ALJ mentioned many of these opinions, although he did not accord them controlling weight. (R. at 24-26.)

### b.    The absence of a related limitation in the RFC

Ultimately, the ALJ arrived at the same RFC determination that he made in his prior decision, *i.e.*, providing identical exertional (light work), postural (occasionally climb ramps or stairs and can frequently balance) and environmental limitations (avoid even moderate exposure to hazards). (*Compare* R. at 19, *with* R. at 210.) Plaintiff claims that the ALJ's RFC determination is "flawed[,] because it incorporates absolutely no limitations related to the Plaintiff's migraines." (DE 15 at 27.) Seemingly, Plaintiff argues that the ALJ should have included limitations for CPP, being off-task, and/or absenteeism. (DE 15 at 28-29, 31.)

In support of this argument, Plaintiff expressly cites several records. (DE 15 at 30-31.) Some of them pre-date the June 19, 2014 amended AOD (R. at 970, 999, 1084, 1086, 586, 1401, 1412),[5] while others are more decidedly relevant, spanning the period of June 2014 through July 2015 (R. at 1522, 841, 891, 938,

---

[5] "[M]edical evidence that predates the period of alleged disability may be, and ought to be, considered insofar as it bears on the claimant's condition after the onset of disability." *Moore v. Comm'r of Soc. Sec.*, No. 11-11857, 2013 WL 1278478, at *3 (E.D. Mich. Mar. 26, 2013) (Lawson, J.).

1659, 684, 1942).[6]  The Commissioner contends that Plaintiff is inviting the Court

"to reweigh the evidence[,]" (*see* DE 18 at 8-10), and points to the ALJ's correct

reliance "on multiple neurological examinations and extensive diagnostic testing of

Plaintiff's head, brain, and the arteries supplying blood to her brain . . . that were

all normal[.]"  (DE 18 at 14 (citing R. at 21-22).)

### c.      The omission should be corrected or explained.

The Commissioner contends that the ALJ accommodated Plaintiff's

headaches with the environmental limitation of "avoid[ing] even moderate

exposure to hazards."  (R. at 19, DE 18 at 14.)  However, the ALJ did not actually

supply this reasoning, and the Commissioner's explanation here is a *post hoc*

rationalization. *Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (6th Cir. 1991) ("Courts

are not at liberty to speculate on the basis of an administrative agency's order....

The court is not free to accept 'appellate counsel's post hoc rationalization for

agency action in lieu of reasons and findings enunciated by the Board.' ") (internal

---

[6] Plaintiff also expressly cites a May 31, 2017 record that was not before the ALJ, as well as other records that post-date the ALJ's August 1, 2017 decision.  (DE 15 at 30, R. at 59, 74, 67, 113.)  However, "evidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review."  *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (citing *Cline v. Comm'r of Social Security*, 96 F.3d 146, 148 (6th Cir.1996)).  Additionally, Plaintiff cites testimony from both of the administrative hearings and Plaintiff's function report.  (DE 15 at 30-31, R. at 142, 147 [July 13, 2017], R. at 171, 167, 175, 408, 162, 167 [Jan. 22, 2016].)  However, the ALJ discounted Plaintiff's credibility.  (R. at 26.)  As the Commissioner correctly points out, Plaintiff has not challenged that finding.  (DE 18 at 10-11.)

citation omitted; *see also*, *Schroeder v. Comm'r of Soc. Sec.*, No. 11-14778, 2013 WL 1316748, at *13 (E.D. Mich. Mar. 1, 2013). Even if this were the ALJ's intention, he does not explain *which* hazards are to be avoided or *how* such avoidance will accommodate for migraines. And, as Plaintiff correctly notes, the ALJ's prior opinion, which *did not* include migraines as a severe impairment at Step 2, already had an RFC limitation that Plaintiff "must avoid even moderate exposure to hazards." (R. at 208, 210.) (*See* DE 19 at 4.) In fact, the Disability Determination Explanation (DDE) form exemplifies "hazards" as "machinery, heights, etc." (R. at 196.) Without more, it is difficult to see how this singular environmental limitation − or any of the exertional or postural limitations − is meant to address migraine headaches. The Commissioner's explanation would make more sense if the ALJ had assessed environmental limitations to "noise" or "vibration" or "[f]umes, odors, dusts, gases, poor ventilation," or perhaps with respect to certain types of workplace lighting, as these are areas that one would expect to aggravate an individual's propensity for headaches.

Still, even if the ALJ mentioned Plaintiff's headaches "on nearly every page of the lengthy RFC analysis[,]" (DE 18 at 15), and even if the ALJ did not give controlling weight to MSS opinions on CPP (R. at 24-26, 1919, 2020, 2022), it remains to be seen how the ALJ concluded that Plaintiff's migraines were a severe impairment, yet did not include a relative limitation, or at least did not make clear

why Plaintiff's migraine headaches either did not warrant one or were somehow addressed by the identical RFC found in *both* of this ALJ's decisions, which seems unlikely.

### F.    Conclusion

Plaintiff essentially advocates that, as a person "closely approaching advanced age," whose education is "limited or less," and whose previous work experience is "unskilled or none," she is considered "disabled" if found to be exertionally limited to sedentary work.  20 C.F.R. § Pt. 404, Subpt. P, App. 2, Rule 201.09.  (DE 15 at 31.)  Plaintiff has shown legal error that could upend the ALJ's decision as to the explanation for the physical RFC assessment and the absence of mental health RFC limitations.  For the foregoing reasons, it is

**RECOMMENDED** that the Court **GRANT** Plaintiff's motion for summary judgment (DE 15), **DENY** Defendant's motion for summary judgment (DE 18), and **REMAND** this matter to the Commissioner for further action consistent with this report.  On remand, the ALJ should, *inter alia*:  (1) explain or correct the omission of any additional limitations for migraines in the RFC; (2) be specific as to which environmental or other limitations accommodate for migraines and how they do so; (3) include or explain the reason for not including limitations for CPP, being off-task, and/or for absenteeism; (4) provide an explanation, *i.e.,* a logical bridge, between the evidence and the ALJ's determination that Plaintiff is capable

of the lifting, carrying, standing, walking, sitting, pushing and pulling limitations of light work; (5) give a specific assignment of weight to Dr. Eldohiri's disability certificate (R. at 1796); and, (6) provide a new Step 5 analysis, with additional testimony from a VE, as necessary.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated:  August 19, 2019                    s/*Anthony P. Patti*
                                           Anthony P. Patti
                                           UNITED STATES MAGISTRATE JUDGE